UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

_____

| | | |
|---|---|---|
| ROBERT D. BROWN, | ) | C/A No.: 4:15-cv-1478-BHH-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **Report and Recommendation** |
| | ) | |
| | ) | |
| WARDEN MCFADDEN, | ) | |
| | ) | |
| Respondent. | ) | |

_____ )

Petitioner, Robert D. Brown, (Petitioner), filed a pro se petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254[1] on April 6, 2015. (Doc. #1). Respondent

filed a motion for summary judgment on September 2, 2015, along with a return and

memorandum. (Doc. #s 19 & 20). The undersigned issued an order filed September

2, 2015, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising

Petitioner of the motion for summary judgment procedure and the possible

consequences if he failed to respond adequately. (Doc. #21). Thereafter, Petitioner

informed the court that the entirety of his petition had not been included in the

docketed version of his habeas corpus petition. (Doc. #24).   Consequently,

_____

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate
Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(c), DSC.
Because this is a dispositive motion, this report and recommendation is entered for review by the
district judge.

Respondent's motion for summary judgment was deemed moot, and the petition was updated to include the additional pages. (Doc. #s 26 & 31). On September 21, 2015, Respondent re-filed its motion for summary judgment. (Doc. #33). The following day, another order pursuant to Roseboro was issued. (Doc. #34). On October 19, 2015, Petitioner filed a response in opposition to the motion for summary judgment. (Doc. #40).

## PROCEDURAL HISTORY

The procedural history as set forth by the Respondent has not been seriously disputed by the Petitioner in his response. Therefore, the undersigned will set out the undisputed procedural history, in part, as set forth by the Respondent.

Petitioner is currently incarcerated in Lee Correctional Institution. The Georgetown County Grand Jury indicted Petitioner during the April 2008 term for assault and battery with intent to kill (ABWIK), assault and battery of a high and aggravated nature (ABHAN), and kidnapping.[2]  Petitioner was represented by C. Reuben Goude, Esquire. Appearing on behalf of the State was Dorie C. Biagianti of the Fifteenth Circuit Solicitor's office. Petitioner's jury trial began on July 29, 2008,

---

[2] In his response to summary judgment, Petitioner sets forth a statement of facts as follows:
> As presented at trial, petitioner was charged with walking into Palmetto Tax Services in the Georgetown city limits and allegedly took Ms. Keith by knife point out of the tax service by pulling her by her neck. Petitioner also allegedly stabbed Mr. Lee Epps.

before the Honorable James E. Lockemy, South Carolina Circuit Court Judge, and a jury. Petitioner proceeded to a jury trial and was convicted by the jury as indicted. Judge Lockemy sentenced Petitioner to two concurrent terms of life imprisonment without the possibility of parole on the kidnapping and ABWIK convictions, with a concurrent ten years' imprisonment for ABHAN.

## Direct Appeal

A timely Notice of Appeal was served on behalf of Petitioner, and an appeal was perfected. On appeal, Petitioner was represented by Wanda Carter, Deputy Chief Appellate Defender with the South Carolina Commission on Indigent Defense. Ms. Carter filed an Anders brief, raising the following issue:

> The lower court erred in admitting into evidence appellant's prior bad acts of trespassing and repeated telephone calls as these acts occurred under circumstances that were wholly unrelated to the setting that spawned the assault charges in the present case, and because the prejudicial value of this evidence outweighed the probative value.

(App. 648). Ms. Carter also asked that she be relieved as counsel as "in her opinion, the appeal [was] without legal merit sufficient to warrant a new trial." (App. 654). Subsequently, Petitioner filed a pro se Anders brief, raising the following issues:

1. Whether the lower court erred in admitting appellant's statements made while in custody?

2. Whether the solicitor violated appellant's Fifth Amendment privilege against self-incrimination when appellant was called

3

back to the stand without warning and made to identify his signature at the onset of the <u>Jackson v. Denno</u> hearing?

3.      Whether appellant's Six Amendment Right to confrontation was violated by the absence of Sgt. James Burke from the trial?

4.      The solicitor violated the Golden Rule in her closing argument?

(App. 661).

The South Carolina Court of Appeals affirmed Petitioner's convictions in an unpublished opinion filed February 1, 2010.  (App. 683).  Petitioner filed a pro se Petition for Rehearing, which was denied by the court of appeals on March 19, 2010. (Doc. #s 20-6 & 20-7).  The Remittitur was issued on April 23, 2010.  (Doc. # 20-8).

**PCR**

Petitioner filed his application for post-conviction relief (PCR) on May 11, 2010, arguing that he received ineffective assistance of trial counsel because "Counsel Failed to object to prior bad acts" and that he received ineffective assistance of appellate counsel because "Counsel Failed to research transcript for meritorious Issues." (App. 685).  The State served its return on July 8, 2010.

Subsequently, Petitioner, through PCR counsel Ian A. Taylor, filed an amended application asserting the following allegation:

Applicant was denied the right to effective assistance of counsel, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the South

4

Carolina Constitution when trial counsel failed to counsel Petitioner on
the possibility of a mandatory sentence of life without [parole] when
Petitioner declined a plea offer.

(App. 696).  PCR counsel provided the following factual support for that allegation:

During a conference with the Solicitor, Petitioner and Petitioner's
counsel, Petitioner was offered a plea deal of 15 years.  At no time
before or during this meeting did trial counsel advise petitioner that he
faces a mandatory sentence of life without parole under SC Code § 17-
25-45 for prior convictions of armed robbery and armed kidnapping.
Uninformed of the possible outcome at trial, Petitioner declined the
offer.  Petitioner never waived right to counsel.

(App. 697).

An evidentiary hearing was held on August 31, 2012, before the Honorable
Thomas A. Russo, South Carolina Circuit Court Judge.  During the hearing, both
Petitioner and Reuben C. Goude (trial counsel) testified. (App. 700–72).  Judge
Russo filed his order of dismissal on September 24, 2012, denying and dismissing the
PCR application with prejudice.  (App. 775–80).

## PCR Appeal

Petitioner filed an appeal from the dismissal of his PCR appeal and was
represented by David Alexander, Appellate Defender with the South Carolina
Commission on Indigent Defense.  A petition for writ of certiorari was filed on
Petitioner's behalf raising the following allegation:

Whether trial counsel was ineffective in derogation of petitioner's Sixth

5

Amendment right to counsel and Eighth Amendment right to be free from cruel and unusual punishments because he failed to object to the use of petitioners' 1979 conviction pursuant to the federal Youth Corrections Act to enhance his sentence under section 17-25-45 of the South Carolina Code?

(Doc. # 20-11 at 3). The State filed a Return. (Doc. #20-12).

Petitioner's PCR action concluded upon the Supreme Court of South Carolina's denying the petition for writ of certiorari on September 11, 2014, and issuing its remittitur on September 29, 2014. (Doc. #s 20-13 and 20-14).

## HABEAS ALLEGATIONS

Petitioner raised the following allegations in his petition, quoted verbatim:

GROUND ONE: Ineffective Assistance of Counsel

Supporting facts: Counsel was ineffective in derogation of petitioner's Six Amendment rights to Counsel and Eighth Amendment right to be free from Cruel and unusual punishments because he failed to object to the use of petitioner's 1979 Conviction pursuant to the Federal Youth Corrections Act to enhance his sentence under Section 17-25-45 of South Carolina Code?

GROUND TWO: The lower Court erred in admitting into evidence prior bad Acts.

Supporting Facts: The lower court erred in admitting into evidence. Trespassing and repeated telephone calls as these alleged acts occurred under circumstances that were wholly unrelated to the setting that spawned thee alleged assaut

6

charge.

GROUND THREE:          Ineffective Assistance of Counsel

Supporting Facts:          Trial Counsel was ineffective for failing to object to the solicitor violating petitioner's Fifth Amendment privilege against self-incrimination when petitioner was called back to the stand without warning and made to identify his signature at the onset of the Jackson v. Denno hearing. Counsel failed to object.

GROUND FOUR:          Ineffective assistance of Counsel

Supporting Facts:          Counsel was ineffective when he failed to object to the solicito violating the Golden Rule when she told the Jury to put themselves in the victims shoes. So unless you walk a mile in her shoes, you can't possibly, why wasn't she screaming? See Tran. line. 11-14 attached

GROUND FIVE:          Ineffective Assistance

Supporting Facts:          Counsel was ineffective for failing to object to the solicitor vouching for two state witnesses. See Tran. page 350, lines 817. Tran. 347-14-16.

GROUND SIX:          Ineffective Assistance of Counsel

Supporting Facts:          Counsel fail to object to the authenticity of the 911 Tape after state witness testified that a portion of the tape was blank. See Tran page 55. lines - 18-19 Page 54. line. 7-8 also see exhibit.

7

GROUND SEVEN:          Ineffective Assistance of Counsel

Supporting Facts:        Counsel was ineffective for failing to object
                         to prosecutorial misconduct.   When the
                         solicitor testified for an uncalled witness.
                         Who was not present in the courtroom, during
                         her summation.

(Petition, Doc. #s 1 & 1-1) (errors in original).  For each ground in the petition,

Petitioner included attachments providing additional relevant facts.

## STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by

pro se litigants, to allow them to fully develop potentially meritorious cases.  See

Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The

court's function, however, is not to decide issues of fact, but to decide whether there

is an issue of fact to be tried.  The requirement of liberal construction does not mean

that the court can ignore a clear failure in the pleadings to allege facts which set forth

a federal claim,  Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor

can the court  assume the existence of a genuine issue of material fact where none

exists.  If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is

proper.  Summary judgment is proper if there is no genuine dispute of material fact

and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a);

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if

the non-moving party fails to establish an essential element of any cause of action

upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317.

Once the moving party has brought into question whether there is a genuine dispute

for trial on a material element of the non-moving party's claims, the non-moving

party bears the burden of coming forward with specific facts which show a genuine

dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v.

Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward

with enough evidence, beyond a mere scintilla, upon which the fact finder could

reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The facts and inferences to be drawn therefrom must be viewed in the light most

favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir.

1991).   However, the non-moving party may not rely on beliefs, conjecture,

speculation, or conclusory allegations to defeat a motion for summary judgment.

Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied

on must meet "the substantive evidentiary standard of proof that would apply at a trial

on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

       To show that a genuine dispute of material fact exists, a party may not rest

9

upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324

(Rule 56(e) permits a proper summary judgment motion to be opposed by any of the

kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings

themselves).  Rather, the party must present evidence supporting his or her position

through "depositions, answers to interrogatories, and admissions on file, together with

... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel

Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86

(4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions

for summary judgment, the court must also consider the petition under the

requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in the State court proceedings
> unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United
> States; or
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the State
> court proceeding.

10

Thus, a writ may be granted if a state court "identifies the correct principle from [the Supreme] Court's decisions but unreasonably applies that principle of law" to the facts of the case. <u>Humphries v. Ozmint</u>, 397 F.3d 206, 216 (4th Cir. 2005) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000)). However, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." *Id.* "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." <u>McHone v. Polk</u>, 392 F.3d 691, 719 (4th Cir. 2004). Further, factual findings "made by a State court shall be presumed to be correct," and a Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

This deferential standard, however, does not apply to any claim not adjudicated on the merits in state court. 28 U.S.C. § 2254(d); <u>Cone v. Bell</u>, 556 U.S. 449, 129 S.Ct. 1769, 1784 (2009); <u>Lewis v. Wheeler</u>, 609 F.3d 291, 300 (4th Cir. 2010). Rather, such a claim is reviewed <u>de novo</u>. <u>Id.</u>

## PROCEDURAL BAR

The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the

11

federal courts, <u>Smith v. Murray</u>, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

<u>Reed v. Ross</u>, 468 U.S. 1, 10–11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar[3],

---

[3]Procedural default generally is an affirmative defense that must be raised by the respondent in a habeas action.  <u>Yeatts v. Angelone</u>, 166 F.3d 255, 260 (4th Cir. 1999).

the exercise of that power ordinarily is inappropriate unless
the defendant succeeds in showing both "cause" for
noncompliance with the state rule and "actual prejudice"
resulting from the alleged constitutional violation.

Smith v. Murray, 477 U.S. 533 (quoting Wainwright v. Sykes, 433 U.S. at 84 (1977)).

See also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas Petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a Petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S.478, 496 (1986).

## ANALYSIS

### Ground One

In Ground One of the habeas petition, Petitioner argues that trial counsel was ineffective for failing to object to the use of two 1979 convictions to enhance Petitioner's sentence. Petitioner asserts that his 1979 convictions for armed robbery and armed kidnapping should not have been used to enhance his sentence under S.C. Code Ann. § 17-25-45 because those crimes occurred when Petitioner was nineteen years old, and he was sentenced under the Federal Youth Corrections Act.

13

Respondent submits that this claim is procedurally barred. And, in the alternative, Respondent asserts this claim is without merit.

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); see Williams v. Taylor, 529 U.S. at 398.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

14

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." <u>Turner v. Bass</u>, 753 F.2d 342, 348 (4th Cir. 1985) (quoting <u>Strickland</u>), <u>reversed on other grounds</u>, 476 U.S. 28 (1986).  In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal.  <u>Strickland</u> requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional  errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

<u>Strickland</u>, 466 U.S. at 694.  The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the <u>wide</u> <u>range</u> of professionally competent assistance.  (Emphasis added.)

<u>Id.</u>; <u>Williams v. Taylor</u>, 529 U.S. 362 (2000)(confirming the <u>Strickland</u> analysis).

Prior to the start of trial, trial counsel informed the trial court that the State had served Petitioner with intent to seek life without parole (LWOP) for the ABWIK and

15

kidnapping charges. (App. 115). Trial counsel noted that the prior convictions that would potentially be used to enhance Petitioner's sentence occurred in the 1970s. (App. 115). Trial counsel argued the prior convictions were too remote to enhance any sentence, asserting that to do so would violate "the South Carolina and United States Constitutions; and also as being cruel and unusual punishment in both the South Carolina and the United States Constitutions. (App. 115). The assistant solicitor confirmed that she intended to seek LWOP based on Petitioner's 1979 armed robbery and armed kidnapping convictions from Washington, D.C. (App. 117). Trial counsel then told the court, "My client wishes me to state that: The conviction was in another state—actually in Washing, [sic] DC—and that he was convicted as a juvenile slant [sic] youthful offender; and therefore wishes me to make the motion that: That conviction cannot be used in South Carolina to enhance . . . ." (App. 118). The trial court then asked what Petitioner's date of birth was and determined that Petitioner would have been nineteen at the time of the crime. (App. 119–20). The trial court asked, "[W]hat evidence do we have he was convicted under some juvenile statute?" (App. 121). The assistant solicitor responded, "I have no evidence of that." (App. 121). Trial counsel indicated that he only had Petitioner's own statement that he was sentenced "under the youthful offender act of Washington, DC; and therefore he states that that is a juvenile slant [sic] youthful offender record that should not or

16

could not be used to enhance the penalty in this case." (App. 121–22). The trial court indicated that he would address the matter later should Petitioner be convicted but told trial counsel to proceed as if the court had denied the motion. (App. 122–23). After argument on the admissibility of some of Petitioner's prior convictions, the trial court told trial counsel,

> Mr. Goude, as far as your motion regarding constitutionality and remoteness:
>
> > Uh—I deny that motion, respectfully.
> >
> > I feel that the statute is clear that anybody who's convicted of two most serious offenses sometime in their lifetime, and after they're convicted of the second one, that person—uh—under the law is to be—uh—incarcerated the rest of her life.

(App. 129).

After the jury verdict, the assistant solicitor asked the trial court to sentence Petitioner to LWOP, stating

> [B]ased on South Carolina law, the armed kidnapping and armed robbery convictions from Washington, D.C. are what we consider a most serious strike, and as you are aware, when you are convicted of a second most serious strike, the Court has no discretion in sentencing the defendant. He must be sentenced to life in prison, Your Honor.

(App. 631–32). Petitioner received LWOP for both the ABWIK conviction and the kidnapping conviction. (App. 638).

At the PCR evidentiary hearing, Petitioner testified to the following regarding

17

his prior crimes,

> That was an issue in that I received that sentence under the 5010(c) Youth Correctional Act and I thought that the remoteness of that should not have been, shouldn't have been an issue in regards to the enhancement of my sentence because I felt that thirty years ago even though I was seventeen, I was about nineteen by the time it went to trial and was over with, I did receive a youth act for reconsideration because I actually did not commit the crime but I was associated with the people who did.

(App. 709). Trial counsel testified that his notes reflected that he had made a motion to try to prevent using the 1979 convictions as enhancing convictions but that the trial court had denied that motion. (App. 748–50). The PCR court made the following findings regarding Petitioner's prior record:

> Applicant testified his counsel was ineffective for failing to exclude Applicant's prior record of a 1979 conviction from consideration in his sentence. Counsel testified, and the record supports, that counsel argued the prior conviction was too remote to be used against Applicant, but the Court simply disagreed. See trial transcript, P. 628, L. 11-23. Further, counsel made a motion in limine to exclude prior bad acts which was effective in obtaining the Solicitor's commitment that he would not go into the matters discussed.

(App. 778).

In his PCR appeal, Petitioner made the same argument he raises in Ground One. (Doc. # 20-11). In its return, the State argued that Petitioner's argument was procedurally barred because the PCR court had not addressed whether trial counsel should have argued that Petitioner's 1979 convictions were juvenile convictions.

(Doc. # 20-12). The supreme court summarily denied the petition for writ of certiorari. (Doc. # 20-13).

Respondent now argues this claim is procedurally barred because it was not ruled upon by the PCR court, and therefore, the claim was not preserved for appellate review. See Smith v. Murray, supra; see also Plyler v. State, 424 S.E.2d 477, 478 (S.C. 1992) (stating issue not preserved for review where it was neither raised to nor ruled on by the PCR judge). The undersigned agrees that the state procedural bar renders this ground unavailable in habeas review absent a showing of cause and prejudice to excuse the procedural bar. See Bostick v. Stevenson, 589 F.3d 160, 164–65 (4th Cir. 2009) (recognizing the South Carolina Supreme Court's clarification "that 'the general rule' is that where [an argument is not specifically ruled upon by a PCR court and] a party fails to file a Rule 59(e) motion, the argument is forfeited" (quoting Marlar v. South Carolina, 653 S.E.2d 266 (S.C. 2007))). As to Petitioner's claim that trial counsel's ineffectiveness is cause to excuse the procedural bar, (see Doc. # 40 at 3), the Court notes trial counsel could not have caused the procedural bar as to this claim because the procedural bar occurred during Petitioner's PCR action. As Petitioner has failed to establish either cause or prejudice[4] for the procedural

---

[4]To establish cause under Martinez, Petitioner must demonstrate (1) that his PCR counsel was ineffective under Strickland and (2) that "the underlying ineffective-assistance-of-counsel claim is a substantial one." Martinez, 132 S. Ct. at 1318.

default, the undersigned recommends that Respondent's motion for summary judgment be granted as to Petitioner's Ground One.

## Ground Two

In his Ground Two, Petitioner claims that the trial court erred in admitting into evidence Petitioner's prior bad acts, including trespassing and repeated telephone calls. According to Petitioner, "these alleged acts occurred under circumstances that were wholly unrelated to the setting that spawned thee [sic] alleged assaut [sic] charge." (Doc. #1 at 7). In the attachment to his petition, Petitioner further alleges that "Counsel was also ineffective in that Counsel failed to object to this blatant miscarriage of justice." (Doc. # 1-1 at 4). Respondent contends that "[t]his claim

---

Therefore, Petitioner must show that PCR counsel's failure to raise this issue at PCR or to file a Rule 59 motion was "objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter." Sexton, 679 F.3d at 1157; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective assistance-of-counsel claims"); Strickland v. Washington, 466 U.S. at 687 (stating to demonstrate ineffective assistance of counsel, a petitioner must show that (1) counsel's errors were so serious that her performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution and (2) petitioner was prejudiced as a result). Petitioner's claims are subject to dismissal because he cannot meet the standards of Strickland as fully explained above. See generally Martinez, 132 S.Ct. At 1313. Since Petitioner has not satisfied the prongs of Strickland, Martinez does not aid Petitioner because the underlying ineffective assistance of counsel claim has no merit.

involves an evidentiary issue not cognizable on federal habeas review." (Doc. # 20 at 20).  As to the ineffective assistance of counsel claim, Respondent asserts that the PCR court reasonably denied relief on this claim.

The undersigned agrees with Respondent that Petitioner's claim that the trial court erred in admitting certain evidence is not cognizable in habeas review as it pertains to state evidentiary rules.  The court will not grant relief based on the state's own standards for sufficiency of the evidence. See Wilson v. Greene, 155 F.3d 396, 407 (4th Cir. 1998); Wright v. Angelone, 151 F.3d 151, 157 (4th Cir.1998). Further, a state court's decision on a question of state law is binding in federal court. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Thomas v. Davis, 192 F.3d 445, 449 n.1 (4th Cir. 1999).

To the extent this issue was raised as an ineffective assistance of counsel claim, the PCR court considered whether counsel was ineffective for failing to object to the admission of evidence concerning Petitioner's prior bad acts and found to the contrary, noting "counsel made a motion in limine to exclude prior bad acts which was effective in obtaining the Solicitor's commitment that he would not go into the matters discussed." (App. 778).  As to a specific claim regarding counsel's failure to object to telephone records, the PCR court found "Applicant ha[d] not proved prejudice from the examination of the records, just that the prosecution continued to

question him on the records which made him uncomfortable." (App. 779). The PCR court found trial counsel had employed a reasonable trial strategy in attempting to show that the victim's boyfriend was the aggressor. (App. 779).

The factual findings that the PCR court relied upon in denying this claim are supported by the record and are entitled to deference in this action. Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008), (citing 28 U.S.C. § 2254(e)(1) (for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear)); see also Marshall v. Lonberger, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). For example, trial counsel made a motion in limine to exclude "prior difficulties" between Petitioner and the victim, including harassing phone calls and allegations of criminal domestic violence. (App. 105–10, 130). At that time, the assistant solicitor indicated that she intended to keep her questions about Petitioner's contact with the victim very general unless Petitioner's own testimony necessitated a more specific inquiry into those matters. (App. 106–09). After hearing Petitioner's testimony on direct, the assistant solicitor questioned Petitioner about his phone calls to Petitioner on the day of the crimes and in the weeks leading up to that. (App. 446–54). Later on in cross-examination, the assistant solicitor attempted to use home

22

phone records to cross-examine Petitioner, and the trial court disallowed that without the records having been introduced as exhibits. (App. 494–95). When she continued to question Petitioner regarding the records, the trial court reminded her, "What you say is not evidence. So the jury cannot believe what you're saying is evidence." (App. 496). The trial court record also reflects that a witness testified about Petitioner receiving a trespass notice on January 24, 2008, when he was asked to leave the property where the victim worked, but he came back a short time later. (App. 236–41). At the PCR evidentiary hearing, trial counsel testified that part of his trial strategy was to show that Petitioner loved the victim and had proposed to her. (App. 763–65). The trial transcript reflects that prior to the trespass testimony, trial counsel had questioned the victim about when Petitioner proposed to her, and she stated, "He brought the ring by my job January 24th." (App. 200). The PCR court's factual conclusions were not unreasonable based on the evidence presented at the PCR evidentiary hearing.

Moreover, the PCR court did not misapply federal law in denying this ineffective assistance of counsel claim where the court found Petitioner failed to make a sufficient showing under the two prongs of Strickland. The PCR court found trial counsel's strategy was reasonable, thus rejecting the proposition that trial counsel provided deficient representation regarding the introduction of the trespass

or phone harassment evidence. (See App. 779). Courts are instructed not to second guess an attorney's trial strategy and tactics. Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991); Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977); see also Strickland, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"). The PCR court also found that Petitioner failed to show prejudice, noting that the only evidence Petitioner presented in support of this allegation was that it made him uncomfortable. See Strickland, 466 U.S. at 696 (providing the burden is on the petitioner to demonstrate counsel's ineffectiveness); see also Gray v. United States, Civ. A. No. 5:12-CV-740-FL, 2014 WL 2917044 (E.D.N.C. June 26, 2014) ("The burden of proof lies with the petitioner and a petitioner's conclusory statements will not suffice to overcome such burden.") (citing United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005)).    For all of the above reasons, it is recommended that Respondent's motion for summary judgment be granted as to Ground Two.

**Ground Three**

In Ground Three of the habeas petition, Petitioner argues trial counsel was ineffective for failing to object "when petitioner was called back to the stand without

24

warning and made to identify his signature at the onset of the Jackson v. Denno hearing." (Doc. #1 at 8). According to Petitioner, trial counsel should have objected because that was a violation of his Fifth Amendment right against self-incrimination. Respondent contends that there was no basis on which trial counsel could object.[5] Thus, Petitioner cannot meet his burden of showing deficiency and prejudice.[6]

At trial Petitioner took the stand in his defense. (App. 399–507). During the State's cross-examination of Petitioner, counsel began to ask Petitioner about his statements to the police. (App. 454). The trial court then paused the proceedings for a bench conference and then excused the jury. (App. 454–55). Trial counsel asserted that Petitioner's statement was made involuntarily while Petitioner was in custody. (App. 455). Petitioner was on the witness stand when the hearing began, and the trial court allowed him to stay there briefly to identify his signature before the State presented its first witness. (App. 456). The State then presented the testimony of Investigator Johnell Spartman. (App. 457–503). Investigator Spartman testified

---

[5]The court would note that the apparent consideration of a Fifth Amendment violation on direct appeal does not render the corresponding ineffective assistance of counsel claim preserved. See Kornahrens v. Evatt, 66 F.3d 1350, 1361–62 ("Generally under South Carolina law, direct appeal is the only avenue of relief for trial related errors of a non-constitutional dimension. Post-conviction relief is limited to claims of ineffective assistance of counsel and other errors of a constitutional dimension." (internal citations omitted)). Nevertheless, Respondent has not raised a procedural bar to this issue. See Gray v. Netherland, 518 U.S. 152, 166 (1996) (indicating that if procedural default is not raised as a defense, a respondent loses the right to assert that defense).

[6]It is noted that this issue was raised as trial court error on direct appeal, which was denied by the South Carolina Court of Appeals.

about two separate interviews with Petitioner, and the video recordings of those interviews were shown to the court. (App. 463–64). Based on the evidence presented during the hearing, the trial judge found that Petitioner's statement was voluntary. (App. 472–74). At the conclusion of the *Jackson v. Denno* hearing, Petitioner returned to the stand, and the State continued its cross-examination. (App. 476–503). Portions of the videotaped statements to police were played to impeach Petitioner's testimony. (App. 481, 484, 485, 489).

This ineffective assistance of counsel claim was not addressed by the PCR court. Thus, the deferential standard of review set forth in 28 U.S.C. § 2254(d) does not apply, and this Court reviews Petitioner's Ground Three de novo. See Cone v. Bell, 556 U.S. 449, 472 (2009); Winston v. Kelly, 592 F.3d 535, 553–54 (4th Cir. 2010) ("The only limitation on § 2254(d)'s application is that the claims submitted must have been 'adjudicated on the merits' in state court. When a claim has not been adjudicated on the merits by the state court, a federal court reviews the claim de novo.").

Petitioner asserts that trial counsel was deficient for failing to object to the questions posed to him regarding whether the signature on the Miranda waiver belonged to him. And he further claims that "but for Counsel's dereliction of duty, petitioner may have had a successful trial." (Doc. # 1-1 at 9). Respondent, on the

26

other hand, asserts that Petitioner fails to meet either prong of <u>Strickland</u> because Petitioner's statements and his own signature were admissible. (Doc. # 20 at 28 (citing <u>Hough v. Anderson</u>, 272 F.3d 878 (7th Cir. 2001); <u>United States v. Bosch</u>, 914 F.2d 1239, 1247 (9th Cir. 1990) (absent showing that the unobjected to testimony was not properly admissible, failure to object is not unreasonable or prejudicial on federal habeas review)).

As the Fourth Circuit has recognized, "the Supreme Court has recommended that when possible, the prejudice prong should be first addressed." <u>Cousins v. Green</u>, 416 F. App'x 278, 282 (4th Cir. 2011). In this case, even assuming arguendo that trial counsel was deficient for failing to object to the State asking Petitioner about his signature on a <u>Miranda</u> waiver, Petitioner has failed to establish that he was prejudiced by trial counsel's failure. Petitioner's own conclusory, overly broad allegation that he would "have had a successful trial" had trial counsel objected is unavailing. Nor does the record indicate that the trial court would have found Petitioner's two, videotaped statements involuntary had Petitioner not confirmed that his signature was on the Miranda waiver, particularly since the trial court was able to view the videotaped statements and Petitioner's demeanor during them. <u>Compare Harris v. New York</u>, 401 U.S. 222 (1971) (finding statements that were inadmissible under <u>Miranda</u> in the government's case-in-chief could be used to impeach a

27

defendant's own testimony, noting "[h]aving voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process"), with Mincey v. Arizona, 437 U.S. 385 (1978) ("Statements made by a defendant in circumstances violating the strictures of Miranda v. Arizona are admissible for impeachment if their 'trustworthiness . . . satisfies legal standards.' But any criminal trial use against a defendant of his involuntary statement is a denial of due process of law, 'even though there is ample evidence aside from the confession to support the conviction.'" (internal citations omitted) (emphasis in original)). Petitioner has not met the prejudice prong as he has not shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

It is thus recommended that Respondent's motion for summary judgment be granted as to Ground Three.

**Grounds Four, Five, and Seven**

In Petitioner's Grounds Four, Five, and Seven, he asserts that trial counsel was ineffective for failing to object during the solicitor's closing argument when the solicitor (1) made a Golden Rule argument, (2) vouched for the credibility of two State witnesses, and (3) referenced a non-testifying witness, respectively. (See Doc.

# 1 at 10; Doc. # 1-1 at  43, 64).  Respondent argues that Petitioner's Grounds Five and Seven are procedurally barred as they were not ruled upon by the PCR court.[7] Respondent further argues that irrespective of the procedural bar, the three grounds lack merit.

Petitioner's trial counsel gave his closing argument first.  (App. 522–71).  At one point, trial counsel essentially asked the jury to put themselves in the victim's shoes, arguing

> If you were sitting in the tax service office or anywhere in a public place of business and you got people down the hall working, you got a couple sitting right across from you in broad daylight 2:30 in the afternoon on a Thursday morning, and you sitting there.  You got a reception to come and go in the back.  Mrs. Browy is sitting back there working with somebody, a guy who just came in and asked her a question is back there with her.  Another man and his wife sitting right there across from you and some maniac comes in and sits beside you in your doctor's office, the lawyer's office, your accountant's office, the law office where you work, anywhere, pulls out a knife.  Sticks it to your throat and says, "Bitch, I'm going to kill you."

> Now, "Bitch, I'm going to kill you."

> . . . .

> Wouldn't you at least say, "Help.  Please save my life."

> Or something to those people sitting right over there, the

---

[7] Though the record reflects that Ground Four was also not ruled upon by the PCR court, Respondent has failed to assert a procedural bar as to that ground.  Accordingly, the undersigned will review the merits of that ground de novo.  See supra n.2.

receptionist that's walking up and down the hall. Mrs. Browy is down the hall with the man that's asking a quick question. You know there's at least five other people in the tax office would help you.

(App. 528–29). Then the State made its closing argument, which included the following statements that Petitioner now claims violated the Golden Rule:

> The funny thing is Mr. Goude tried to make a big deal, you know, why when he came in she didn't holler; she didn't scream?

> People do all kinds of things that we wouldn't normally do when we're put in that situation. So, unless you walked a mile in her shoes, you can't possibly, "Why wasn't she screaming?"

> Maybe if she would have screamed, maybe he would have killed her but, again, that's not up to you for speculation.

> And she told you on the witness stand, "I was compliant. I was scared. I was doing what he said because I kept thinking about my children."

> I don't think any of you can fault her for that.

(App. 573). Trial counsel did not object to the above statements.

At the PCR evidentiary hearing, neither Petitioner nor trial counsel discussed any alleged Golden Rule violations by the solicitor.

"In a Golden Rule argument, jurors are urged to place themselves in the position of a party, a victim, or a victim's family member and decide the case from that perspective." Brown v. Cartledge, C.A. 9:09-2554-JFA-BM, 2010 WL 2733858, at *6 (D.S.C. June 10, 2010) report and recommendation adopted, C.A. 9:09-2254-

JFA, 2010 WL 2730882 (D.S.C. July 9, 2010) (quoting Gilchrist v. Hagan, No. 06-1236, 2007 WL 951749, at *29 (D.S.C. Mar. 27, 2007)). "However, '[t]he law is clear that although it is improper to ask jurors to place themselves in the postition of a party, such a "golden rule" argument does not constitute reversible error if no prejudice arise[s] from counsel's comment.'" Id. (quoting Ladantae v. Koppel, 2010 WL 2025586, at *13 (D.Md. May 19, 2010)).

Based on the undersigned's reading of the record, it appears that the solicitor was arguing against the jury putting themselves in the victim's shoes—in an effort to contravene the victim's credibility, trial counsel had encouraged the jurors to put themselves in the victim's shoes, but the solicitor told the jury that it would be speculation for them to do so. Thus, her statements did not violate the Golden Rule. However, even to the extent that the solicitor's comments could be read to violate the Golden Rule, Petitioner failed to show what prejudice resulted from the comments. While an objection may be needed where you have objectionable conduct, it is not a violation of the due process if a Petitioner fails to show that the remarks so prejudiced his substantial rights that he was denied a fair trial. See United States v. Lighty, 616 F.3d 321, 359 (4th Cir.2010); see also Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). The facts in this case do not rise to this level. Accordingly, the court would recommend granting

31

Respondent's motion for summary judgment as to Petitioner's Ground Four.

The undersigned now turns to the grounds that Respondent argues are procedurally barred. In his Ground Five, Petitioner contends that trial counsel should have objected to the following statement about Kathy Browy:

> You know, why—why would she come here and swear to tell the truth? You heard she has a family because she's going to risk her family. She's going to risk her livelihood, her job, and more importantly, she's going to risk perjuring herself and her freedom for—for two people she doesn't have any connection besides having a business relationship?
>
> You know, we should be commending Mrs. Browy because that's the kind of person I want if something bad were to happen. That's the kind of person any citizen should want to come and have enough courage to tell the truth.

(App. 579). Petitioner also takes issue with the solicitor's statement about Officer Pamela Kosiak that "I think the State proved from Officer Kosiak, an independent witness, Georgetown Police police officer, working at Prince George. You know, no motivation to lie in this case." (App. 576).

In his Ground Seven, Petitioner asserts that trial counsel was ineffective for failing to object "when the solicitor testified for an uncalled witness. Who was not present in the courtroom, during her summation." (Doc. # 1-1 at 64). Petitioner is referencing part of the solicitor's closing argument where she discussed her cross-examination of Petitioner:

When I cross examined him, I asked him about February 13th.  I don't know.  Maybe he was trying to shmooze her for Valentine's Day. I don't know but he said.

"Do you remember talking to Officer Jarod Bardon of the Georgetown County Sheriff's Office."

He didn't deny that.  He can't deny it because Officer Bardon would have come in here and said, "Yeah, I talked to him."

He said, "Oh, I'll never forget that conversation," or something to that effect.

"And isn't it true that Officer Bardon told you not to call?"

And he had to admit that, too.

(App. 585).

Neither of these grounds was ruled upon by the PCR court.  Consequently, this court agrees with Respondent's assertion that Petitioner's Grounds Five and Seven are procedurally barred.  (See App. 775–80); see also Smith v. Murray, supra; Plyler v. State, supra.  As to Ground Four, Petitioner asserts that he asked PCR counsel to file a rule 59(e) on his behalf, but PCR counsel failed to do so, (Doc. # 1-1 at 60), and as to Ground Seven, Petitioner asserts that PCR counsel, a real estate lawyer, was not knowledgeable of criminal law and failed to raise this issue, (Doc. # 1-1 at 67).  To the extent that Petitioner's allegations can be read to assert claims that Martinez v. Ryan,132 S. Ct. 1309 (2012), allows him to overcome the procedural bars of his

33

Grounds Five and Seven, the Court finds Petitioner has failed to demonstrate cause to excuse the procedural bar under Martinez. Therefore, Petitioner must show that PCR counsel's failure to raise this issue at PCR or to file a Rule 59(e) motion was "objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter." Sexton, 679 F.3d at 1157; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective assistance-of-counsel claims"); Strickland, 466 U.S. at 687 (1984) (stating to demonstrate ineffective assistance of counsel, a petitioner must show that (1) counsel's errors were so serious that her performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution and (2) petitioner was prejudiced as a result).

Petitioner has not shown that his PCR counsel was ineffective under Strickland and that the underlying claims of ineffective assistance of trial counsel are substantially meritorious to overcome the procedural bar. For example, the solicitor's discussion of Mrs. Browy's testimony and of Officer Kosiak's testimony appears to be directed to factors that supported those witnesses' credibility, but the solicitor did not make any personal assurance of their credibility. "Vouching generally occurs

34

when the prosecutor's actions are such that a jury could reasonably believe that the prosecutor was indicating a personal belief in the credibility of the witness." United States v. Johnson, 587 F.3d 625, 632 (4th Cir. 2009) (citation and quotation marks omitted).   "The rule against vouching exists because 'the prosecution's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.'" Id. (quoting United States v. Young, 470 U.S. 1, 18–19 (1985)); see also State v. Raffaldt, 456 S.E.2d 390, 393 (S.C. 1995) ("The solicitor has the right to give his version of the testimony and to comment on the weight to be given to the testimony of the defense witnesses.  Therefore, although the State cannot 'pit' witnesses during questioning, it may comment on the credibility of the witnesses in argument.").   Counsel may address the credibility of the witnesses given the evidence in the case.  Matthews v. State, 565 S.E.2d 766, 768 (S.C. 2002) ("A solicitor may argue the credibility of the State's witnesses if the argument is based on the record and its reasonable inferences.").   In this case, the assistant solicitor was doing just that.   Petitioner cannot show that counsel's failure to object to the statements was error, much less that it was objectively unreasonable such that it rendered his performance deficient.  PCR counsel, likewise, was not ineffective for failing to file a Rule 59(e) motion to secure a ruling by the PCR court on this claim.

Similarly, the assistant solicitor was merely commenting on Petitioner's own testimony when she referred to what Officer Bardon could have testified to. And even to the extent that comment could be construed as improper, trial counsel could not be ineffective for failing to object absent some prejudice. Petitioner failed to establish prejudice, particularly where it appears that Officer Bardon's testimony would have confirmed Petitioner's own testimony that the two spoke.

Accordingly, Petitioner cannot demonstrate that the underlying ineffective assistance of counsel claims set forth in Petitioner's Grounds Five and Seven are substantial, nor can he show PCR counsel was ineffective for failing to raise those issues at the PCR hearing or in a subsequent Rule 59(e) motion. See Martinez, supra. The undersigned recommends that Respondent's motion for summary judgment be granted as to these grounds.

**Ground Six**

In Ground Six Petitioner submits that trial counsel was ineffective for failing to challenge the authenticity of the 911 tape recording that was introduced as evidence, which was partially blank. Respondent asserts that this claim is procedurally barred as it was not ruled upon by the PCR court. Respondent further submits that apart from the procedural bar the claim lacks merit.

When Kathy Browy testified, she identified the recording of the 911 call that

36

she made in which she identified Petitioner as the person who was attacking the two victims. (App. 280–86). Mrs. Browy confirmed that the 911 call that was introduced as evidence (State's Exhibit 15) was a fair and accurate representation of the call she made. (App. 285–86). When asked if the call contained any deletions or modifications, Mrs. Browy responded, "Well, not that I—there's a part in there that is blank. So you didn't some of what I thought was being recorded." (App. 286). However, she followed up by confirming that there had been no additions and that nothing had been taken out, stating, "It was pretty accurate." (App. 286). The 911 operator who accepted the call also testified that it was an accurate representation of the call he had received that day and that there had been no additions, modifications, or deletions to the recording. (App. 292).

While testifying at the PCR evidentiary hearing, Petitioner mentioned Mrs. Browy's testimony that part of the tape was blank. (App. 729). Petitioner also asserted that he had a friend from Washington, D.C. play the tape for him and that no part of the tape was blank, but he could not track that tape down. (App. 729–30). The PCR court did not rule on this ineffective assistance of counsel claim. (See App. 775–80).

The court agrees with Respondent that since the claim raised in Petitioner's Ground Six was not ruled upon by the PCR court, it is procedurally barred in this

habeas action. Petitioner has failed to assert either cause or prejudice for the procedural bar, and none is readily apparent from the record. Accordingly, the undersigned recommends granting Respondent's motion for summary judgment as to Petitioner's Ground Six.

## **CONCLUSION**

As set out above, a review of the record indicates that the petition should be dismissed. Therefore, it is RECOMMENDED that Respondent's motion for summary judgment (Doc. #33) be granted and the petition be dismissed without an evidentiary hearing.

Respectfully submitted,

    s/Thomas  E.  Rogers,  III
Thomas E. Rogers, III
July 20, 2016                                   United States Magistrate Judge
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice**.